OPINION OF THE COURT
Yvonne Lewis, J.
In this action by plaintiff Samuel Festinger seeking the imposition of a constructive trust and alleging claims of conversion and unjust enrichment, defendants George Edrich, Ellen Baratz, Bruce Edrich, Jonathan E. Edrich, and Dina Edrich (collectively, defendants) move for summary judgment dismissing plaintiffs complaint as against them.
The background of this matter is as follows: during the time period of January 1, 1986 through December 31, 1995, plaintiff had engaged in a fraudulent scheme with respect to the sale of fuel to individuals and businesses, wherein these customers were defrauded out of monies. Plaintiff was charged with mail fraud, and sentenced to five years’ probation. In addition, pursuant to a settlement agreement dated May 2, 1993 with Chemical (now Chase Manhattan) Bank, plaintiff was required to pay it restitution in the total amount of $500,000. By a restitution order dated April 6, 1995, following a sentencing proceeding, in United States of America v Festinger (Index No. 92 CR 82-94 CR 288 [SD NY]), Judge John F. Keenan ordered plaintiff to make restitution, beginning on July 1, 1995 and each quarter thereafter, in the amount of $1,835,936 to the individuals and businesses which were defrauded. The restitution order further ordered plaintiff to continue to make restitution payments to Chemical Bank in the amount of $65,000 annually, with the final payment of May 1, 2000 to be $25,000.
Subsequently, plaintiff was charged with 49 counts of violating his probation. These counts included charges that from May 1995 through May 1999, plaintiff failed to submit truthful and complete written monthly supervision reports in that each report submitted by him omitted material information in regard to his employment and income from his real estate and automobile rental/leasing business. These counts also included charges that on July 7, 1997 and February 2, 1999, plaintiff submitted personal financial statements which contained false and misleading statements, including the response “none” under “real estate.”
*702 On April 4, 2000 a sentencing hearing was held, before Judge Keenan relating to these charges of plaintiffs misrepresentations about the extent of his assets. At the hearing, plaintiffs attorney represented to Judge Keenan that “there is no doubt that [plaintiff] is broke” and that plaintiff “has no money” (transcript at 5); that “[pleople have looked for [plaintiffs] money under every rock . . . under every bed mattress, and there’s no money” and that plaintiff “has absolutely no money” (transcript at 8); and that plaintiff “stands before your Honor . . . completely [as] broke as anyone [she] ha[d] ever represented with people having searched for all of his assets, and coming up with nothing” (transcript at 14). Plaintiff was sentenced to three years of supervised release and was required to continue to make restitution to the former customers and to Chase Manhattan Bank.
In May 2004, plaintiff brought the instant action against defendants. The first cause of action of plaintiff’s complaint seeks to impose a constructive trust upon certain real property, which is located at 607 Avenue K, in Brooklyn, New York. The deed to this property reflects that on July 20, 1994, title to such property was conveyed by Jerrold Siskin to Ester Edrich, who was plaintiffs sister. Plaintiff alleges that he had given Ester Edrich the funds necessary to purchase the property, that she had tendered no funds of her own to acquire the property or to pay any expenses of the property, and that he tendered all of the funds in payment of the mortgage obligation of the property and for maintenance and expenses of the property. Plaintiff avers that at the time that title was placed in the name of Ester Edrich, he and Ester Edrich agreed that the real property was to be held for his benefit. Ester Edrich died on January 21, 1999, and, on June 2, 2003, George Edrich, in his capacity as executor of the estate of Ester Edrich, transferred title of the property, which was devised to him by Ester Edrich’s last will and testament, to his name. Plaintiff asserts that at the time that George Edrich transferred the title of the property to himself, George Edrich knew that he was the equitable title owner of the property, and that, by refusing to transfer title of the property to him, George Edrich has deprived him of his ownership interest in it.
Plaintiffs second cause of action alleges a claim of conversion against Bruce Edrich, who is the son of George Edrich and the late Ester Edrich, and seeks recovery of $70,000, with interest. Plaintiff asserts that he was the owner of a certificate of deposit *703 account at Republic National Bank of New York, which had a value of $70,000, and that Bruce Edrich converted this account to his own use, and has refused to tender it to him.
Plaintiffs third and fourth causes of action both allege conversion claims against defendants, and seek, respectively, a judgment directing defendants to return certain valuable personal property to him, and damages. Plaintiff states that he was the owner of the personal property, which he claims to have stored at 271 Exeter Street, in Brooklyn, New York, the residence of George Edrich and the late Ester Edrich. The personal property includes a gold watch, various gold jewelry, 7,500 one dollar silver certificate bills, a solid silver candelabra, a leather briefcase containing $6,000, 1,500 antique coins, and 200 antique family pictures. Plaintiff asserts that Ester Edrich agreed that she would hold the personal property for him and took possession of it for his benefit. He avers that when Ester Edrich died, defendants continued to retain possession of this personal property, knowing that it was to be held for his benefit, but when, in July 2002, he demanded that defendants return this property to him, they refused to do so. Plaintiffs fifth cause of action alleges a claim of unjust enrichment. Defendants have interposed an answer to plaintiffs complaint, which asserts affirmative defenses, including unclean hands and estoppel.
In support of their instant motion, defendants assert that plaintiff is estopped from now claiming that he has assets due to his representations at the April 4, 2000 sentencing hearing before Judge Keenan that he had no assets. Pursuant to the doctrine of judicial estoppel, a claim made or position taken by a party in a former action or judicial proceeding will estop the party from making any inconsistent claim or taking a conflicting position in a subsequent action simply because his or her interests have changed (see European Am. Bank v Miller, 265 AD2d 374, 374 [1999]; Ford Motor Credit Co. v Colonial Funding Corp., 215 AD2d 435, 436 [1995]; Kimco of N.Y. v Devon, 163 AD2d 573, 574-575 [1990]; Environmental Concern v Larchwood Constr. Corp., 101 AD2d 591, 593 [1984]).
In opposition to defendants’ motion, plaintiff argues that he made no admission at the sentencing hearing before Judge Keenan that he had no assets. He asserts that he never stated that he had “no assets.” Plaintiffs argument is rejected. As discussed above, plaintiffs attorney at the sentencing hearing specifically informed Judge Keenan that plaintiff had no assets. Plaintiffs attorney at the sentencing hearing had the authority *704 to represent him and plaintiff is bound by the representations made by her, in his presence, to the court. It is well settled that “[statements made in a previous suit by an attorney before the court can be imputed to a party and [are] subject to judicial estoppel” (Hall v GE Plastic Pac. PTE Ltd., 327 F3d 391, 396 [5th Cir 2003]; see also Hidden Oaks Ltd. v City of Austin, 138 F3d 1036, 1047 [5th Cir 1998]; Bubeck v Main Urology Assoc., 275 AD2d 909, 909 [2000]; Matter of Daniel C., 99 AD2d 35, 46 [1984], affd 63 NY2d 927 [1984]).
Plaintiff also asserts that the transcript of the sentencing hearing does not recite any particular real property or make any reference to the property at issue in this case. He argues that the statements made by his attorney only meant that he had no liquid assets and that the property at issue did not have any liquid value that could be used to pay restitution. Such argument, however, is belied by the express statements of his attorney at the sentencing hearing, who, as noted above, represented that there was a search made for all of plaintiffs assets, and that he was completely broke and had no money. Since, as previously noted, the counts with which plaintiff had been charged included misrepresentations regarding his real estate, plaintiffs attorney’s statements cannot be logically construed to refer only to plaintiffs liquid assets.
Consequently, the unqualified and unequivocal representations made at plaintiff’s sentencing hearing constituted an acknowledgment by plaintiff that he had no rights or interest in the subject property. Plaintiff cannot “be permitted to play fast and loose with the courts by advocating contrary positions in different legal proceedings” (Perkins v Perkins, 226 AD2d 610, 610 [1996]; see also Ford Motor Credit Co., 215 AD2d at 436; Kimco of N.Y., 163 AD2d at 575; Environmental Concern, 101 AD2d at 594). Thus, the doctrine of judicial estoppel or estoppel against inconsistent positions applies to estop plaintiff from contending that he had any interest in the real or personal property at issue (see Meyer v Insurance Co. of Am., 1998 WL 709854, *10, 1998 US Dist LEXIS 15863, *30 [SD NY, Oct. 9, 1998]; Mantia v Squire, 289 AD2d 304, 305 [2001]; Black v White & Case, 280 AD2d 407, 408 [2001]; Perkins, 226 AD2d at 610-611).
Moreover, the doctrine of unclean hands also constitutes a bar to plaintiffs action (see Moo Wei Wong v Wong, 293 AD2d 387, 387 [2002]; Walker v Walker, 289 AD2d 225, 226 [2001]; Smith v Long, 281 AD2d 897, 898 [2001]; Vasquez v Zambrano, *705 196 AD2d 840, 840 [1993]; Lagonegro v Lagonegro, 187 AD2d 490, 491 [1992]; Ta Chun Wang v Chun Wong, 163 AD2d 300, 302 [1990], lv denied 77 NY2d 804 [1991], cert denied 501 US 1252 [1991]; Muscarella v Muscarella, 93 AD2d 993, 993 [1983]; Farino v Farino, 88 AD2d 902, 903 [1982]). Pursuant to the doctrine of unclean hands, reconveyance of property will be denied to the plaintiff where the plaintiff had transferred the property with the intent to defraud (see Walker, 289 AD2d at 226; Muscarella, 93 AD2d at 994; Farino, 88 AD2d at 903). This is because the basis of such an action to compel the reconveyance of the property “is immoral and one to which equity will not lend its aid” (Farino, 88 AD2d at 903; see also Muscarella, 93 AD2d at 993). Under such circumstances, the relief sought must be denied “ ‘as a matter of public policy in order to protect the integrity of the court’ ” (Jossel v Meyers, 212 AD2d 55, 57 [1995], quoting Langdon v Langdon, 138 AD2d 358, 358 [1988]; see also Moo Wei Wong, 293 AD2d at 387).
Plaintiff, relying upon the case of Fade v Pugliani/Fade (8 AD3d 612, 614 [2004]), contends that the doctrine of unclean hands is available only when the party seeking to invoke the doctrine was injured by the conduct relied upon. Plaintiffs reliance upon that case is misplaced. It has been explicitly held that where a plaintiff transfers property to a defendant, usually a relative, in order to defeat the interests of a third party, such as possible claims of creditors, a showing that the defendant was actually injured by plaintiffs conduct is not required (see Jossel, 212 AD2d at 58; Yula v Yula, 115 AD2d 475, 476 [1985]; Farino, 88 AD2d at 903).
Here, on July 20, 1994, at the time of plaintiff’s alleged transfers of monies to his sister to fund the purchase of the subject real property, plaintiff was already subject to the May 2, 1993 agreement requiring him to pay restitution of $500,000 to Chemical Bank. The deed was also executed during the time period during which the fraudulent scheme, with which plaintiff was soon thereafter charged, took place. Plaintiff has offered no reason for not placing title to the property in his own name rather than that of his sister, nor does he deny the fact that the alleged transfer was made in an effort to hide his monies and to thwart these creditors’ claims against him. Similarly, plaintiff does not offer any explanation for storing valuable personal property at defendants’ house other than to conceal them in order to defeat potential just claims against him. Plaintiff also does not state how Bruce Edrich obtained possession of the *706 $70,000 certificate of deposit unless it was placed in his name or was inherited by Bruce Edrich from plaintiffs sister after it was placed in his sister’s name.
Thus, the conduct of plaintiff in concealing his assets for the purpose of escaping his obligations and defeating just claims of creditors is “contrary to good morals, sound public policy, and the spirit and letter of our laws” (Farino, 88 AD2d at 903). The door of a court of equity must, therefore, be shut in this case (Jossel, 212 AD2d at 58).
Plaintiff also states that the doctrine of unclean hands “ ‘is only applicable when the conduct relied on is directly related to the subject matter in litigation’ ” (Fade, 8 AD3d at 614, quoting Mehlman v Aurech, 146 AD2d 753, 754 [1989]). He contends that no acts committed by him have any direct relationship to the property in question. Such contention is devoid of merit. The alleged conduct of plaintiff, in placing his property in his sister’s name and storing personal property in her house in an effort to hide it from claims against him and his conduct in denying the existence of such property in the sentencing hearing, are directly related to his instant claim to now have such property reconveyed to him.
Plaintiff additionally argues that defendants are not entitled to summary judgment because they have failed to show that Ester Edrich had owned the real property or made any mortgage payments in connection therewith, or that defendants owned the other property at issue. Such argument lacks merit. The deed to the real property evidences Ester Edrich’s ownership of it, and defendants’ possession of the other property evidences their ownership rights in it (see generally Matter of Myers v Key Bank, N.A., 68 NY2d 744, 746 [1986]; Matter of Ingargiola, 212 AD2d 789, 790 [1995]; 207 Realty Assoc. v 210 Cent. Park N. Realty Corp., 140 Misc 2d 684, 686 [1988]).
Plaintiffs argument that defendants will unjustly benefit if he is denied relief herein is similarly unavailing. The doctrine of unclean hands is firmly ingrained in our system of jurisprudence “ ‘not to favor [the] defendant ], but as a matter of public policy’ ” (Holland v Ryan, 307 AD2d 723, 725 [2003], quoting Janke v Janke, 47 AD2d 445, 450 [1975], affd 39 NY2d 786 [1976]). Pursuant to the doctrine of unclean hands, relief must be denied “not as a protection to a defendant, but as a disability to the plaintiff’ (Farino, 88 AD2d at 903; see also Jossel, 212 AD2d at 57).
Plaintiff also argues that summary judgment is premature because he needs to depose Morris Flyer, a nonparty witness, *707 who was the attorney in connection with the acquisition of the real property. Plaintiff states that Morris Flyer will testify that Ester Edrich contributed nothing toward the purchase of the property and that the property was being held by her for his benefit. Plaintiffs argument is without moment. Since defendants’ defense to this action is grounded upon the doctrines of judicial estoppel and unclean hands, such potential testimony cannot provide a basis for plaintiffs claim, and, therefore, cannot provide a reason, pursuant to CPLR 3212 (f), for postponing the granting of summary judgment to defendants (see generally Williams v General Elec. Co., 8 AD3d 866, 867 [2004]; Dunn v 726 Main & Pine, 255 AD2d 981, 982 [1998]; Wood v Otherson, 210 AD2d 473, 474 [1994]; Limpar Realty Corp. v Uswiss Realty Holding, 112 AD2d 834, 837 [1985]; La Scala v D’Angelo, 104 AD2d 930, 931 [1984]).
Accordingly, defendants’ motion for summary judgment dismissing plaintiffs complaint as against them is granted.